UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ESO CAPITAL PARTNERS UK LLP, <br><br> Plaintiff, <br><br> -against- <br><br> SNOWBRIDGE ADVISORS LLC, <br><br> Defendant. | Case No. 1:22-cv-01856-JGK |

# DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION
# TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

 

**BARTON LLP**
711 Third Avenue, 14th Floor
New York, NY 10170
(212) 687-6262
rbarton@bartonesq.com
rrasey@bartonesq.com
*Attorneys for Plaintiffs*

Dated May 3, 2023

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

FACTUAL BACKGROUND..........................................................................................................1

    A. Snowbridge Advisors and Snowbridge Securities ............................................................1

    B. The Agreement....................................................................................................................2

    C. ESO's breach of the Agreement, and the Prior Lawsuit .......................................................4

    D. ESO's demand for payment of its legal expenses................................................................6

ARGUMENT...................................................................................................................................7

POINT I:      THE FEE-SHIFTING PROVISION DOES NOT UNAMBIGUOUSLY PERTAIN TO SNOWBRIDGE ADVISORS .......................................................8

POINT II:     THE FEE-SHIFTING PROVISION DOES NOT PERMIT RECOVERY OF FEES INCURRED IN SEEKING AN AWARD OF ATTORNEYS FEES, AS ESO SEEKS IN THIS ACTION. ....................................................................12

POINT III:    THE BRANCH OF ESO'S PRE-DISCOVERY MOTION SEEKING SUMMARY JUDGMENT ON SNOWBRIDGE ADVISORS' FIFTH, SIXTH, AND SEVENTH AFFIRMATIVE DEFENSES IS PREMATURE.. ..................14

CONCLUSION..............................................................................................................................15

# TABLE OF AUTHORITIES

Cases

*A.G. Ship Maint. Corp. v. Lezak,*
  69 N.Y.2d 1 (1986) ..................................................................................................................9

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) ................................................................................................................8

*Catlin Speciality Ins. Co. v. QA3 Fin. Corp.,*
  36 F. Supp. 3d 336 (S.D.N.Y. 2014), *aff'd*, 629 F. App'x 127 (2d Cir. 2015) .........................12

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) .......................................................................8

*Chiampou Travis Besaw & Kershner, LLP v. Pullano*,
  194 A.D.3d 1480 (4th Dep't 2021) ........................................................................................14

*Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.,*
  232 F.3d 153 (2d Cir. 2000) ...................................................................................................12

*Cowen & Co. v. Tecnoconsult Holdings Ltd.,*
  No. 96 CIV. 3748 (BSJ), 1996 WL 391884 (S.D.N.Y. July 11, 1996) ...................................14

*Davis-Garett v. Urb. Outfitters, Inc.,*
  921 F.3d 30 (2d Cir. 2019) .......................................................................................................8

*Delaware & Hudson Railway Co. v. Consolidated Rail Corp.,*
  902 F.2d 174 (2d Cir. 1990) .....................................................................................................8

*Excelled Sheepskin & Leather Coat Corp. v. Oregon Brewing Co.,*
  897 F.3d 413 (2d Cir. 2018) .....................................................................................................7

*F.H. Krear & Co. v. Nineteen Named Trustees*,
  810 F.2d 1250 (2d Cir. 1987) .................................................................................................13

*Flatiron Acquisition Vehicle, LLC v. CSE Mortg. LLC*,
  No. 1:17-CV-8987-GHW, 2022 WL 413229 (S.D.N.Y. Feb. 9, 2022) .............................9, 13

*Fleischmann Distilling Corp. v. Maier Brewing Co.,*
  386 U.S. 714 (1967) ................................................................................................................9

*Hooper Assocs., Ltd. v. AGS Computers, Inc.,*
  74 N.Y.2d 487 (1989) ..............................................................................................................9

*International Multifoods Corp. v. Commercial Union Ins. Co.,*
  309 F.3d 76 (2d Cir. 2022) .....................................................................................................10

*Int'l Paper Co. v. Suwyn*,
   951 F. Supp. 445 (S.D.N.Y. 1997) ................................................................................8

*Law Debenture Tr. Co. of New York v. Maverick Tube Corp.*,
   595 F.3d 458 (2d Cir. 2010) ..........................................................................................9

*Mighty Midgets, Inc. v. Centennial Ins. Co.*,
   47 N.Y.2d 12 (1979) .....................................................................................................9

*Oscar Gruss & Son, Inc. v. Hollander*,
   337 F.3d 186 (2d Cir. 2003) ..........................................................................................9

*Sayers v. Rochester Telephone Corp. Supplemental Management Pension Plan*,
   7 F.3d 1091 (2d Cir.1993); ................................................................................8, 9, 12

*Seiden Assocs., Inc. v. ANC Holdings, Inc.*,
   959 F.2d 425 (2d Cir.1992) ..........................................................................................8

*Summit Valley Indus., Inc. v. United Bhd. of Carpenters & Joiners*,
   456 U.S. 717 (1982) ......................................................................................................9

*Swiss Credit Bank v. Int'l Bank, Ltd.*,
   23 Misc. 2d 572 (Sup. Ct. N.Y. Cty. 1960) ................................................................13

*Thor 725 8th Ave. LLC v. Goonetilleke*,
   675 F. App'x 31 (2d Cir. 2017) ..................................................................................13

*U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*,
   369 F.3d 34 (2d Cir. 2004) ............................................................................................9

*Weinstock v. Columbia Univ.*,
   224 F.3d 33 (2d Cir. 2000) ............................................................................................8

*Zion v. Kurtz*,
   50 N.Y.2d 92 (1980) ...................................................................................................14

Statutes and Rules

Fed. R. Civ. P. 56(a) .............................................................................................................1

FINRA Rules, Chapter 3000, Rule 3110, *et seq.* .................................................................2

**PRELIMINARY STATEMENT**

Snowbridge Advisors LLC ("Snowbridge Advisors") hereby answers and opposes the pre-discovery motion, pursuant to Fed. R. Civ. P. 56(a), by plaintiff ESO Capital Partners UK LLP ("ESO") for partial summary judgment, by which ESO ask this Court to award it judgment on its claim that Snowbridge Advisors is liable for ESO's attorney's fees incurred in this and a prior lawsuit pursuant to a contractual fee-shifting provision, and to dismiss three of Snowbridge Advisors' affirmative defenses.  Contrary to ESO's arguments, the fee-shifting provision does not unambiguously entitle ESO to seek its attorneys' fees from Snowbridge Advisors, and its pre-discovery motion is premature at best.

**FACTUAL BACKGROUND**[1]

A.  **Snowbridge Advisors and Snowbridge Securities**

Snowbridge Advisors is a financial advisory firm in the private equity market, is not now and never has been a securities broker-dealer.  Under federal securities laws and rules promulgated thereunder by the United States Securities Exchange Commission ("SEC") and Financial Industry Regulatory Authority ("FINRA"), Snowbridge Advisors' individual partners contracted with a separate, licensed broker-dealer firm, DCS Advisory LLC ("DCS Advisory"), and registered with FINRA as representatives (or "associated persons") of DCS Advisory in order to maintain their individual licenses and to be able to engage in securities transactions.  *See* MJ Dec., at ¶¶ 6-8.

---

[1]  Sources cited herein include the accompanying Declaration of Mark Schroeder dated May 2, 2023 (cited herein as "Schroeder Dec."), Declaration of Randall L. Rasey dated May 3, 2023 (cited herein as "RLR Dec."), and the exhibits thereto (cited herein as "Def. Exh. __"); and Defendants' Response to Plaintiff's Rule 56(c) Statement of Facts dated May 3, 2023 (cited herein as "Def. Resp.").

1

As such, DCS Advisory bore the legal obligations to supervise Snowbridge Advisors' partners and to ensure that they complied with its policies and procedures with respect to private equity placements placed through DCS Advisory, as stipulated by FINRA Rules. *See, e.g.*, FINRA Rules, Chapter 3000, Rule 3110, *et seq.*[2] As "Snowbridge Associates" its partners were able to establish their own brand in the private equity market separate from the broker-dealer firm through which they maintained their licenses and conducted securities transactions. But because only a licensed-broker dealer can lawfully receive compensation for securities transactions, which include private placements of private equity funds, all placement-related activities by Snowbridge Advisors' members were necessarily conducted through DCS Advisory. *See* MS Dec., at ¶ 7.

Snowbridge Advisors' partners anticipated establishing their own affiliated, licensed broker-dealer, and eventually did so in September 2019, when Snowbridge Securities' broker-dealer license from the SEC and FINRA became effective. Upon that event, all of Snowbridge Advisors' partners terminated their associations with DCS Advisory and transferred their FINRA registrations to Snowbridge Securities. *See id.*, at ¶¶ 9-13; Def. Exh. A-C.

B. **The Agreement**

ESO was a private equity fund manager based in London, England. In the fall of 2018, ESO engaged the services of Snowbridge Advisors' partners to provide financial advice and placement services in North America to place interests in new private equity fund (the "Fund") which ESO was to manage. ESO did so pursuant to an engagement letter agreement with DCS Advisory dated October 1, 2018 (the "Agreement", cited herein as "Agr.").[3] ESO's legal counsel

---

[2]   FINRA Rules may be accessed via the FINRA web site, at https://www.finra.org/rules-guidance/rulebooks/finra-rules/3000.

[3]   ESO has submitted a copy of the Agreement as Exhibit A to the moving Declaration of Richard Butler dated April 11, 2023 (ECF Doc. No. 30-1).

during the negotiation and execution of the Agreement were from the Sidley Austin law firm, and it does not appear that the Jones Day law firm, which represents ESO in this action, had any involvement in it. *See* MS Dec., at ¶ 16.

Under the Agreement, ESO designated DCS Advisory "to act as exclusive financial advisory to [ESO] and to act as exclusive placement agent in North America in connection with the proposed private placement" in the Fund. Agr, at p. 1. The Agreement stated in its opening paragraph that "[m]embers of Snowbridge Advisors … will participate in the offering as associated persons of DCS Advisory, and, however, for the avoidance of doubt, no Securities will be placed through Snowbridge [Advisors]. *Id.* Although the Agreement did not prescribe any role for Snowbridge Advisors itself in the anticipated transactions, its Managing Partner signed the Agreement on Snowbridge Advisors' behalf, underneath DCS Advisory's signature. *See id.*, at p. 13.

As noted above, Snowbridge Advisors' partners expected to transfer their licenses and placement-related transactions to their anticipated affiliated broker-dealer. At the time of the negotiation and execution of the Agreement among they, ESO, ESO's counsel, and DCS Advisory understood that Snowbridge Advisors would have the unfettered right to assign DCS Advisory's rights, obligations, and role as the broker-dealer in the Agreement to their anticipated broker-dealer firm to be affiliated with Snowbridge Advisors, pursuant to a provision in paragraph 13 of the Agreement stating that ESO, DCS Advisory, and Snowbridge Advisors "agree that Snowbridge [Advisors] shall have the right to assign the rights and obligations under this Agreement to … a fully licensed broker-dealer affiliated with Snowbridge in Snowbridge's sole discretion". Agr., at p. 12, ¶ 13. *See* MS Dec., at ¶ 17. Accordingly, in September 2019 Snowbridge Advisors provided a written "Notice to Engagement Agreement Assignment" on ESO and DCS Advisory stating that

DCS Advisory's rights and obligations as the broker-dealer under the Agreement had been assigned to and assumed by Snowbridge Securities.[4]  Thereafter, Snowbridge Associates' partners continued to provide advisory and placement services to ESO as registered representatives of Snowbridge Securities.

        **C.**        **ESO's breach of the Agreement, and the Prior Lawsuit**

On November 3, 2021, Snowbridge Advisors and Snowbridge Securities filed their lawsuit in this court against ESO and various other parties asserting claims arising from ESO's breach of the Agreement.  That action was captioned *Snowbridge Advisors LLC and Snowbridge Securities LLC v. ESO Capital Partners UK LLP, Soho Square Capital LLP f/k/a ESO Capital Advisors LLP f/k/a Core Capital Partners LLP, Alexander Schmid, Walid Fakhry, and Stephen Edwards*, S.D.N.Y. Case No. 21-cv-9086 (JSR) (referred to herein as the "Prior Lawsuit").  ESO has submitted a copy of the Complaint filed in the Prior Lawsuit (the "Prior Complaint") as Exhibit A to the moving Declaration of Mark R. Seiden dated April 14, 2023 ("Seiden Dec.") (at ECF Doc. 29-1).  *See* RLR Dec., at ¶¶ 3, 4.

As alleged, ESO had transferred its interests in the Fund and its other assets and business to defendant Soho Square Capital LLP ("Soho Square"), without paying the broker-dealer the substantial minimum placement fee owed under the Agreement.  *See* Prior Complaint, at ¶¶ 48-54.  Snowbridge Advisors and Snowbridge Securities, believing that Snowbridge Securities had properly been substituted for DCS Advisory, jointly alleged ESO's breach and sought to recover the minimum placement fee due to Snowbridge Securities as the broker-dealer under the

---

[4]    A copy of the referenced Notice was included as the last page of Exhibit A to Snowbridge Advisors and Snowbridge Securities' Prior Complaint Filed in the Prior Action (discussed *infra*). ESO has submitted a copy of the Prior Complaint, including its exhibit, as Exhibit A to the moving Declaration of Mark Seiden dated April 14, 2023 ("Seiden Dec.") (at ECF Doc. No. 29-1).

Agreement. *See id.*, at ¶¶ 63-71.  The Agreement was annexed as an exhibit to the Prior Complaint and states clearly that all fees due from ESO are payable only to the broker-dealer, as required under well settled securities and broker-dealer laws and rules.  Nowhere in the Prior Complaint was it alleged, or intended to be alleged, that any fees were due to Snowbridge Advisors under the Agreement for its own account, or that Snowbridge Advisors, rather than Snowbridge Securities, could be entitled to seek recovery of attorney's fees under the Agreement's prevailing party fee-shifting provision.  *See* RLR Dec., at ¶¶ 5-7.

In a Memorandum Order dated April 11, 2022, the Hon. Jed S. Rakoff granted motions by ESO and Soho Square to dismiss the Prior Complaint.  *See* Seiden Dec., Exhibit H (at ECF Doc No. 29-8).  ESO's litigation counsel at Jones Day had argued that the assignment the broker-dealer under the Agreement to Snowbridge Securities was improper and ineffective, and Soho Square had joined that argument.  Judge Rakoff agreed, interpreting the Agreement to preclude Snowbridge Advisors from assigning the broker-dealer role from DCS Advisory to Snowbridge Securities, and therefore holding that Snowbridge Securities lacked standing to sue under the Agreement.  Because Snowbridge Advisors was not entitled to payment under the Agreement, Judge Rakoff found that without Snowbridge Securities in the case the monetary threshold for diversity-based subject matter jurisdiction was not met, and dismissed the Complaint for lack of subject matter jurisdiction.  *See id.*

Snowbridge Advisors and Snowbridge Securities have appealed Judge Rakoff's interpretation of the Agreement and dismissal of the Prior Complaint to the Second Circuit Court of Appeals.  That appeal and a cross-appeal have been fully briefed, and are scheduled for argument on June 7, 2023.  *See* RLR Dec., at ¶¶ 10, 11.

**D.     ESO's demand for payment of its legal expenses**

Having persuaded the district court to rule that Snowbridge Securities has no rights or obligations under the Agreement, ESO then turned to Snowbridge Advisors to demand payment of its attorney's fees and expenses incurred in the Prior Action. ESO asserted that because the Prior Lawsuit was dismissed for lack of subject matter jurisdiction, it was the "prevailing party" under the prevailing party fee-shifting provision contained within paragraph 12 of the Agreement, captioned "Governing Law and Jurisdiction", and that Snowbridge Advisors was required under that provision to pay its attorneys' fees and expenses. Snowbridge Advisor's declined ESO's demand.

While formatted as a single paragraph, paragraph 12 contains two distinct sections addressing different subject matters. The first section addresses governing law and the jurisdiction in which disputes may be litigated, as indicated in the paragraph's caption, and states that Snowbridge Advisors as well as ESO and DCS Advisory consent to jurisdiction of courts in New York:

> This Agreement and all lawsuits, actions, disputes or proceedings of any kind arising out of or relating to the Agreement or the engagement thereunder shall be governed by and construed and enforced in accordance with the laws of the State of New York, without giving effect to principles of conflicts of law. The Company [ESO], Snowbridge [Advisors] and DCS Advisory each hereby irrevocably and unconditionally consent to submit to the exclusive jurisdiction of the courts of the State of New York and of the United States District Courts located in the County of New York for any lawsuits, actions or other proceedings arising out of or relating to this Agreement and agree not to commence any such lawsuit, action or other proceeding except in such courts. The Company further agrees that service of any .process, summons, notice or document by mail to the Company's address set forth above shall be effective service of process for any lawsuit, action or other proceeding brought against the Company in any such court.

Agr., at p. 11, ¶ 12.

The second half of paragraph 12 of the Agreement addresses specific waivers and agreed parameters of litigation by ESO and DCS Advisory, and specifically excludes Snowbridge Advisors:

> The Company [ESO] and DCS Advisory hereby irrevocably and unconditionally waive any objection to the laying of venue of any lawsuit, action or other proceeding arising out of or relating to this Agreement in the courts of the State of New York or the United States District Courts located in the County of New York, and hereby further irrevocably and unconditionally waive and agree not to plead or claim in any such court that any such lawsuit, action or other proceeding brought in any such court has been brought in an inconvenient forum. <u>The prevailing party in any suit, action or proceeding to enforce the terms of this Agreement shall be entitled to recover from the non-prevailing party all of the attorney fees and other costs and expenses the prevailing party may incur in such suit, action or proceeding and in any subsequent suit to enforce a judgment.</u> The Company and DCS Advisory agree that any right to trial by jury with respect to any lawsuit, claim or other proceeding arising out of or relating to this Agreement or the services to be rendered by DCS Advisory hereunder is expressly and irrevocably waived.

*Id.* (emphasis added).

As discussed below, even if ESO may be deemed the "prevailing party" in the Prior Lawsuit as a result of the dismissal for lack of subject matter jurisdiction, the fee-shifting provision in the second part of paragraph 12 is not applicable to Snowbridge Advisors. In light of Judge Rakoff's ruling that Snowbridge Securities is not a party to the Agreement, the fee-shifting provision by its terms is binding only upon ESO and DCS Advisory. As DCS Advisory was not a party to the Prior Lawsuit, ESO has no contractual entitlement to recover its attorney's fees, costs, and expenses incurred in that action.

**ARGUMENT**

On a motion for summary judgment, the moving party "bears the burden of 'demonstrat[ing] the absence of a genuine issue of material fact.'" *Excelled Sheepskin & Leather Coat Corp. v. Oregon Brewing Co.*, 897 F.3d 413, 419 (2d Cir. 2018) (quoting *Celotex Corp. v.*

7

*Catrett*, 477 U.S. 317, 323 (1986)). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). "When viewing the evidence, the court must 'assess the record in the light most favorable to the non-movant and ... draw all reasonable inferences in [the non-movant's] favor.'" *Id.* (quoting *Delaware & Hudson Railway Co. v. Consolidated Rail Corp.,* 902 F.2d 174, 177 (2d Cir. 1990)). "'[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Davis-Garett v. Urb. Outfitters, Inc.*, 921 F.3d 30, 45 (2d Cir. 2019) (quoting *Anderson*, 477 U.S. at 249).

"Summary judgment, as here, on a question of contract construction, is appropriate only where the agreement's language is unambiguous and conveys a definite meaning." *Int'l Paper Co. v. Suwyn*, 951 F. Supp. 445, 449 (S.D.N.Y. 1997) (citing *Sayers v. Rochester Telephone Corp. Supplemental Management Pension Plan,* 7 F.3d 1091, 1094 (2d Cir.1993); *Seiden Assocs., Inc. v. ANC Holdings, Inc.,* 959 F.2d 425, 428 (2d Cir.1992)). "Where the language used is susceptible to differing interpretations, each of which may be said to be as reasonable as another, and where there is relevant extrinsic evidence of the parties' actual intent, the meaning of the words become an issue of fact and summary judgment is inappropriate, since it is only when there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." *Seiden Assocs., Inc*., 959 F.2d at 428 (internal citations omitted)

**POINT I:   THE FEE-SHIFTING PROVISION DOES NOT UNAMBIGUOUSLY PERTAIN TO SNOWBRIDGE ADVISORS.**

As a starting point, it is well established that "contractual fee-shifting provisions are to be construed strictly under New York law." *Flatiron Acquisition Vehicle, LLC v. CSE Mortg. LLC*,

No. 1:17-CV-8987-GHW, 2022 WL 413229, at *1 (S.D.N.Y. Feb. 9, 2022). "Under the American Rule[,] it is well established that attorney[s'] fees 'are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor.'" *U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 74 (2d Cir. 2004) (quoting *Summit Valley Indus., Inc. v. United Bhd. of Carpenters & Joiners,* 456 U.S. 717, 721 (1982), quoting in turn *Fleischmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 717 (1967)). In New York, "attorneys' fees are the ordinary incidents of litigation and may not be awarded to the prevailing party unless authorized by agreement between the parties, statute, or court rule. This policy 'provides freer and more equal access to the courts ... [and] promotes democratic and libertarian principles.'" *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 199 (2d Cir. 2003) (quoting *Mighty Midgets, Inc. v. Centennial Ins. Co.,* 47 N.Y.2d 12, 21–22 (1979)).

"Accordingly, while parties may agree that attorneys' fees should be included as another form of damages, such contracts must be strictly construed to avoid inferring duties that the parties did not intend to create." *Id.* (citing, *inter alia, Hooper Assocs., Ltd. v. AGS Computers, Inc.,* 74 N.Y.2d 487, 491 (1989), and *A.G. Ship Maint. Corp. v. Lezak,* 69 N.Y.2d 1, 5 (1986)). "In the final analysis, it is the Obligees who bear the heavy burden of persuading [the court] to depart from the American Rule." *U.S. Fid. & Guar. Co.*, 369 F.3d 78 (citing *Oscar Gruss & Son,* 337 F.3d at 199).

More generally, "[w]here the parties dispute the meaning of particular contract clauses, the task of the court 'is to determine whether such clauses are ambiguous when 'read in the context of the entire agreement.'" *Law Debenture Tr. Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010) (quoting *Sayers,* 7 F.3d at 1095). "An ambiguity exists where the terms of the contract 'could suggest more than one meaning when viewed objectively by a reasonably

9

intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" *Id.*, at 466 (quoting *International Multifoods Corp. v. Commercial Union Ins. Co.,* 309 F.3d 76, 83 (2d Cir. 2022)).

At issue here is the fee-shifting provision contained within paragraph 12 of the Agreement, captioned "Governing Law and Jurisdiction". It is indisputable that not all of the provisions in paragraph 12 are intended to be binding on Snowbridge Advisors, because some expressly exclude Snowbridge Advisors. For example, while paragraph 12 provides that each of ESO, DCS Advisory, and Snowbridge Advisors consent to the exclusive jurisdiction of federal and state courts in the State of New York for lawsuits arising out or relating to the Agreement, it states that only ESO and DCS Advisory waive objections to venue or inconvenient forum in New York County, specifically omitting Snowbridge Advisors from that provision. Paragraph 12 also states that ESO and DCS Advisory, but not Snowbridge Advisors, waive the right to a jury trial in any lawsuit arising our of or relating to the Agreement or relating to the services rendered by DCS Advisory.

Quite obviously, the drafters of paragraph 12 knew to specifically include Snowbridge Advisors in a provision that was intended to apply to it, and also knew how to exclude Snowbridge Advisors from a provision that was not intended to it. That renders the provisions that do not expressly identify any of the parties to whom they apply ambiguous.

As discussed above, paragraph 12 is best understood and may reasonably be construed as having two distinct parts. The first part addresses governing law and the jurisdiction in which disputes may be litigated, as indicated in the paragraph's caption, and states that Snowbridge Advisors as well as ESO and DCS Advisory consent to jurisdiction of courts in New York:

> This Agreement and all lawsuits, actions, disputes or proceedings of any kind arising out of or relating to the Agreement or the engagement thereunder shall be governed by and construed and enforced in accordance with the laws of the State of New York, without giving effect to principles of conflicts of law. The Company [ESO], Snowbridge [Advisors] and DCS Advisory each hereby irrevocably and unconditionally consent to submit to the exclusive jurisdiction of the courts of the State of New York and of the United States District Courts located in the County of New York for any lawsuits, actions or other proceedings arising out of or relating to this Agreement and agree not to commence any such lawsuit, action or other proceeding except in such courts. The Company further agrees that service of any .process, summons, notice or document by mail to the Company's address set forth above shall be effective service of process for any lawsuit, action or other proceeding brought against the Company in any such court.

Agr., at p. 11, ¶ 12.

The second half of paragraph 12 of the Agreement addresses specific waivers and agreed parameters of litigation by ESO and DCS Advisory, and specifically excludes Snowbridge Advisors:

> The Company [ESO] and DCS Advisory hereby irrevocably and unconditionally waive any objection to the laying of venue of any lawsuit, action or other proceeding arising out of or relating to this Agreement in the courts of the State of New York or the United States District Courts located in the County of New York, and hereby further irrevocably and unconditionally waive and agree not to plead or claim in any such court that any such lawsuit, action or other proceeding brought in any such court has been brought in an inconvenient forum. The prevailing party in any suit, action or proceeding to enforce the terms of this Agreement shall be entitled to recover from the non-prevailing party all of the attorney fees and other costs and expenses the prevailing party may incur in such suit, action or proceeding and in any subsequent suit to enforce a judgment. The Company and DCS Advisory agree that any right to trial by jury with respect to any lawsuit, claim or other proceeding arising out of or relating to this Agreement or the services to be rendered by DCS Advisory hereunder is expressly and irrevocably waived.

*Id.*

It is logical and reasonable that Snowbridge Advisors was excluded from the latter part, because Snowbridge Advisors, as an entity, had no role at all in "the services to be rendered by DCS Advisory" under the Agreement. Those services were rendered by Snowbridge Associates'

11

partners only in their capacities as registered representatives of DCS Advisory under DCS Advisory's supervision. Particularly given Judge Rakoff's interpretation of the Agreement so as to preclude Snowbridge Advisors' right to assign DCS Advisory's broker-dealer role to Snowbridge Securities, Snowbridge Advisors' diminished role made it unlikely that it would be involved in litigation concerning the transactions contemplated in the Agreement.

The placement of the prevailing party fee-shifting provision in the second part of paragraph 12, sandwiched between two other provisions which expressly apply only to ESO and DCS Advisory, strongly indicate that the fee-shifting provision too was intended to apply only to ESO and DCS Advisory. At the least, that is a reasonable interpretation.

"Contract language is ambiguous if it is 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement.'" *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 232 F.3d 153, 157–58 (2d Cir. 2000) (quoting *Sayers,* 7 F.3d at 1094). Because the fee-shifting provision is ambiguous, "[t]he fact finder then must look to extrinsic evidence to determine the parties' intent." *Catlin Speciality Ins. Co. v. QA3 Fin. Corp.*, 36 F. Supp. 3d 336, 341–42 (S.D.N.Y. 2014), *aff'd*, 629 F. App'x 127 (2d Cir. 2015). As no discovery has yet taken place, summary judgment should be denied.

**POINT II:   THE FEE-SHIFTING PROVISION DOES NOT PERMIT RECOVERY OF FEES INCURRED IN SEEKING AN AWARD OF ATTORNEYS FEES, AS ESO SEEKS IN THIS ACTION.**

In ESO's Complaint it seeks not only its attorneys' fees incurred in the Prior Action, but also "all attorneys' fees incurred in connection with this action". Complaint (ECF Doc No. 1), at p. 14, Prayer for Relief. As discussed above, ESO is not entitled to recover any fees at all because the Agreement's fee-shifting provision does not pertain to Snowbridge Advisors. But in the

alternative, even if the Court were somehow to find that ESO could avail itself of the fee-shifting provision to seek an award of attorneys' fees incurred in the Prior Action, it still would have no contractual entitlement to "fees on fees", *i.e.*, an award of its fees incurred in this action for an award of fees incurred in the prior action.

"[A] general contract provision for the shifting of attorneys' fees does not authorize an award of fees for time spent in seeking the fees themselves. This is so whether that time is spent in a separate lawsuit, or in the latter stages of the very litigation in which the fee expense was incurred." *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1266 (2d Cir. 1987). *See Flatiron Acquisition Vehicle, LLC*, 2022 WL 413229, at *6 (quoting same). "Of course, it is possible to contract for such an allowance, but as it is an agreement contrary to what is usual, specific language would be needed to show such in an agreement." *F.H. Krear & Co.*, 810 F.2d at 1266 (quoting *Swiss Credit Bank v. Int'l Bank, Ltd.*, 23 Misc. 2d 572, 573-74 (Sup. Ct. N.Y. Cty. 1960)).[5]

Here, the Agreement's fee-shifting provision provides for recovery of fees incurred to enforce the Agreement "in such suit, action or proceeding and in any subsequent suit to enforce a judgment", and contains no specific language allowing recovery of "fees on fees", *i.e.*, fees incurred in a subsequent action to recover attorney's fees. *See, e.g., Thor 725 8th Ave. LLC v. Goonetilleke*, 675 F. App'x 31, 34-36 (2d Cir. 2017) (holding that lease provision that tenant "shall ... pay all costs, expenses and attorneys' fees which may be incurred or paid by Landlord in

---

[5] The contractual language which the *Swiss Credit Bank* court found insufficient to allow recovery of fees incurred in pursuing a fee application, as paraphrased by that court, stated that the defendant "'indemnify and save harmless' plaintiff 'against all loss or damage to it arising in connection with said credits * * * and all claims, demands or suits, whether groundless or otherwise and all liabilities, payments, costs, charges and expenses incurred by' plaintiff 'in respect thereof, it being the purpose of this agreement to fully protect plaintiff in the premises'." *Swiss Credit Bank*, 23 Misc. 2d at 573.

enforcing the covenants and agreements of this Lease" did not include " 'specific language' allowing 'fees on fees'", relying on *F.H. Krear & Co.*).

ESO argues generally, and counter to the controlling case law, "that there is no limiting language in the" fee-shifting provision because the provision refers broadly to "any suit, action, or proceeding to enforce the terms of this Agreement" (Pl. Memo. at 11, quoting Agr., at p. 11, ¶ 12 (emphasis by ESO)), citing case law stating that "the word 'any' means "all' or 'every' and imports no limitation." *Id.*, quoting *Zion v. Kurtz*, 50 N.Y.2d 92, 104 (1980). But *Zion v. Kurtz* addressed the scope of a minority consent requirement in a shareholders' agreement, and neither that case nor the others cited by ESO involved a fee-shifting provision.[6] Further, with regard to who is a "party" entitled to seek to recover fees, the fee-shifting provision states simply that "the prevailing party" has the right to recover fees from "the non-prevailing party" without using the adjective "any".

**POINT III:   THE BRANCH OF ESO'S PRE-DISCOVERY MOTION SEEKING SUMMARY JUDGMENT ON SNOWBRIDGE ADVISORS' FIFTH, SIXTH, AND SEVENTH AFFIRMATIVE DEFENSES IS PREMATURE.**

Snowbridge Advisors asserts its fifth and sixth affirmative defenses on grounds of lack of meeting of the minds and mutual mistake, and asserts its seventh affirmative defense on the ground that ESO may not be a "prevailing party" in the Prior Lawsuit for purposes of the Agreement's fee-shifting provision. ESO's request for summary judgment on the fifth and sixth affirmative defenses is premature, given the ambiguity of the relevant provisions and that no discovery has yet

---

[6]   *See* Pl. Memo., at 11, citing *Cowen & Co. v. Tecnoconsult Holdings Ltd.*, No. 96 CIV. 3748 (BSJ), 1996 WL 391884, at *4 (S.D.N.Y. July 11, 1996) (determining scope of arbitration agreement); *Chiampou Travis Besaw & Kershner, LLP v. Pullano*, 194 A.D.3d 1480, 1483 (4th Dep't 2021) ("the note imposed a late charge for 'any' delinquent payment of principal or interest.")

taken place. ESO's request for summary judgment on the seventh affirmative defense is premature due to the pending appeal of Judge Rakoff's dismissal of the Prior Complaint, which could render ESO's stated basis for claiming "prevailing party" status moot.

## CONCLUSION

As shown above and in the accompanying declarations and exhibits, plaintiff ESO has not established that it is entitled to judgment as matter of law on its claim that defendant Snowbridge Advisors is liable for ESO's attorney's fees incurred in the Prior Lawsuit on any asserted affirmative defense. Snowbridge Advisors respectfully asks this Court to deny ESO's motion in its entirety, and grant such other and further relief as the Court may deem just and proper.

Dated May 3, 2023 in New York, New York.

**BARTON LLP**

By: _____
    Roger E. Barton
    Randall L. Rasey

711 Third Avenue, 14th Floor
New York, NY  10017
(212) 687-6262
rbarton@bartonesq.com
rrasey@bartonesq.com
*Attorneys for Plaintiffs Snowbridge Advisors LLC and Snowbridge Securities LLC*